All right. Council, you will each have five minutes, and you'll keep track of your own time. Ms. Ayala? Okay. You mean 15? I'm sorry. I'm sorry. Fifteen minutes. Okay. What did I say? Five. Five? Oh, that's... That's okay. Sorry. Fifteen minutes. Okay. You may begin when you're ready. Yes. I'd like to reserve four minutes for rebuttal, if that's okay. May it please the Court, Siobhan Ayala on behalf of Mr. Osvaldo Dominguez Ojeda, the petitioner. Today, we ask the Court to grant the petition for review and remand the case to the immigration judge to vacate the asylum officer's negative reasonable fear decision. Mr. Ojeda was severely harmed in Peru. He was thrown stones at him. He was rushed by a mob. He was hit in the back of his head. The mob kicked his dog. He was threatened with a funeral card put on his knees, and there was a fire started at his house. All of these, cumulatively, the harm there could qualify as persecution, but the issue that he did not disclose in his initial reasonable fear interview was a rape. And it is material because a rape would push the level of harm into the torture realm. And so because he didn't disclose the rape, the asylum officer didn't find that there was acquiescence, but also there wasn't enough harm. So ‑‑ Counsel, I have one other question along these lines. The IJ also refused to consider a country conditions report. How would that potentially have altered the analysis? Exactly, Your Honor. The country conditions report showed great civil unrest in Peru. Additionally, there in the executive summary of that 2022 human rights report from the Department of State, it talks about corruption and a pervasive perception of impunity. And Mr. Dominguez Ojeda specifically used those words, corruption, in his reasonable fear interview. So it would have changed the analysis regarding government acquiescence. So that is relevant. And I think the main issue in this case, the way that I see it, is the issue of the de novo review. De novo is not mentioned in the regulations. The regulations just merely say there is a review by the immigration judge, including, and then it lists the government's documents. But the de novo language comes from a memo from the chief immigration judge from 1999. And so I guess the issue is, is the review de novo? Because it's not described as such in the regulations. And then if it is a de novo review, can people present more evidence? And there is a conflict between Bartolome versus Sessions, and it's Alvarado Herrera versus Garland. Because in Bartolome versus Sessions, the Ninth Circuit did allow a motion to reopen to be considered by the court and remanded specifically, finding that it was an abuse of discretion to deny a motion to reopen that was filed afterwards. But Alvarado Herrera doesn't destroy that, does it? It allows the immigration judge to accept additional evidence and testimony? It does, but it limits it. And it talks about the court serving as more like an appellate role rather than accepting new evidence. And the problem with that —  No, it's okay. I want you to touch upon that issue in particular. So is it your understanding that the I.J. didn't have the right to accept more evidence? That's what the I.J. decided. I disagree that he did have more — that he did and should have accepted the evidence. So is your argument that he had to accept the evidence or that he had discretion and abused his discretion? Or didn't exercise it because he said he couldn't? My argument would be that he should — he must have accepted the evidence. There's some cases, which I'm going to be filing a 28-J letter about this, but — and it's regarding credibility, so it's not about this particular issue. But there's three cases in the Ninth Circuit which talk about the fact that a sexual assault that is disclosed later, that's not disclosed during a credible fear interview or asylum fear, should not be the basis for a negative credible fear finding. I guess I — with apologies to Judge DeAlba for interrupting your interruption, I have trouble understanding why there is, in your view, a disconnect between the more recent case and Bartholomew, which says, quote, although an I.J. may allow an alien to submit evidence to support his or her claim, the I.J. is not required to do so, and then it cites the regulations. And that seems to be what Alvarado-Herrera says as well. So I don't understand your view that there's a conflict. Well, the judge interpreted Alvarado-Herrera to mean that he could not accept — Right. But the two cases seem to say the same thing, that it's up to the I.J. to exercise discretion. And I understood your argument to be that this I.J. misunderstood that and thought that he was forbidden. Right. Okay. Yes. I'm sorry. No, no. I just wanted to talk about the importance of allowing people to submit additional evidence because the — for instance, in this case, the petitioner was pro se with the asylum office. When people get these reasonable fear interviews conducted, they're in the detention center. It's within a couple of days of entering the United States. It's by telephone. So the asylum officer is either in Virginia or Los Angeles. And that's just not a conducive environment for someone to disclose a sexual assault. And so when someone within then another only couple days is able to speak with an attorney and disclose that matter, that's something that I believe the judge should have considered. Ms. Ayala, if the I.J. had just said, I will not be considering this new evidence of the rape or the country conditions report, would that have been enough under our case law that says that the I.J. in its discretion can decide not to accept new evidence, doesn't need to state a reason for that? Well, I think he would have needed to have an analysis of why it's not an abuse of discretion to admit the new evidence. What legal authority do you have for that position that you're taking, that he would have had to explain his — why it's not an abuse of discretion for him not to consider the new evidence? Well, under Bartolome versus Sessions, there — the court did recognize there — while the reasonable fear process is a streamlined process, it is — there are due process protections that are afforded to people in that process. And I think it would be superfluous if the judges don't take those — How do we know when an I.J. is exercising his or her discretion in denying the consideration of new evidence? Well, they should state so in their decision. And I'm asking you, what's the case that tells us that that's the standard? I don't believe there is a case, Your Honor. So, Counsel, I know numerous times the I.J. stated that he could not consider evidence that was not provided to the asylum officer. Is that correct? Yes. And I do want to also just note that the petitioner was found to be credible by the asylum office, and the I.J. didn't disturb that credibility issue. So it's not a matter of him not believing what he was saying. Maybe you're not — maybe I just didn't make my question as clear. So the I.J., again, stated numerous times, I can't consider evidence that wasn't before the asylum officer. Is it your position that that is an accurate statement? That's what the judge said, and I disagree with that. Okay. That he can accept evidence as part of his discretion. And I think in this situation, he should have, given the serious — It's your position that he had to. Well, I — maybe I misstated my position. He should have, in terms of exercising his discretion, I think that it was an — it is an abusive discretion, and he should have. But we're one step before that. If he refused to exercise discretion, believing that he had none, then we would have to allow that exercise. And so it seems like premature to say what would or would not be an abuse if the person thought about it and weighed the options. Mm-hmm. Yes, I agree. Okay. Okay. Thank you. Would you like to reserve the balance of your time for rebuttal? Yes, I would. Mr. Robbins. May it please the Court. Good morning to all of you. My name is Jonathan Robbins, and I'm here on behalf of the Respondent, Mera Garland, the United States Attorney General. The key question before the Court today is whether the record compels reversal of the agency's negative reasonable fear determination. And it seems like Your Honors want to know a little bit about whether the immigration judge thought he had the discretion to consider the new record. Well, to me, it's pretty clear that he thought he didn't. I mean, one quote is, I don't believe I can review something the asylum officer did not have the ability to even address. That's, you know, the first of, you know, several of these statements. And he just said, I can't think about that. And that's wrong, isn't it? It is wrong. And I agree with you, the language does suggest that. But I do think it comes up in context where he does acknowledge that he does have the discretion. Well, he cites the right case, but he doesn't apply it. I mean, he cites the case, and then he says these things over and over and over again, saying, and I don't really see another way to read it except as saying, I'm not going to admit this, quote, because it doesn't appear that any of those documents were considered by the asylum officer. That's the only reason it's given over and over. I won't look at this because the asylum officer didn't. Well, Your Honor, he did cite the case, but he also cited the case that the proposition that the case stood for. He did acknowledge that he did have the power that he said he may, but he did not. But when you read this, do you actually think that he thought he was able to exercise his discretion to allow these documents if it seemed like the fair thing to do? Do you think that that's what this means? I do, because I think the immigration judge was inarticulately trying to make a distinction between taking evidence that hadn't been considered by the immigration judge and taking additional evidence of something that had been raised before the immigration judge. Now, I admit it's inarticulate, and the use of a term fundamentally unfair confuses the issue. Well, yes, but these things are not unfair. He says in another place, quote, when I'm reviewing the asylum officer's decision, all I can do is review what the officer had when they made that decision, end quote. That's not an exercise of discretion, it seems to me. Well, Your Honor, even if you think that this is an error, there's several problems. First of all, it would be harmless error, because the immigration judge didn't stop. How do we know that? How do we know that? Because if told that this is permissible to take these things in, how do we know what the decision would be? We were speculating. Because we're not speculating. It's in the record. The immigration judge didn't stop there. The immigration judge, after hearing him explain that he had been embarrassed to disclose the sexual assault, specifically explained that even if he were to consider the sexual assault, it wouldn't have made a difference in the case. I'm troubled by your comment that it would be harmless error even if we assumed that he didn't exercise his discretion. Because if we were to determine that he did not exercise his discretion, which he, through those statements that some of my colleagues have referenced, isn't that legal error, and that alone then requires IJA to consider the consideration of the new evidence and to actually exercise his discretion? I mean, that's legal error. We don't then move to whether or not it's harmless, do we? And if we do, what is your best case for us to undergo essentially what is a harmless error analysis, as opposed to granting relief for the legal error? Well, the court doesn't send a case back to resolve an error unless it can change the outcome of the case. Isn't it typical if an agency has discretion that it refuses to exercise, don't we ordinarily just send it back for the exercise of discretion without going any further? Well, it would if it would make a difference in the case, Your Honor. But my point is here, we have on the record the immigration judge's ---- You're saying that, but I'd like to know what case, that is, in this context, where an IJA has failed to exercise the discretion, so simply doesn't understand that they have the ability to exercise discretion in reviewing new evidence, doesn't understand that, doesn't exercise their discretion. That's legal error at that point. What's your best authority for us to then have to ---- that we would undergo essentially a harmless error analysis? There is no authority either way. The Court has not addressed it in this context. The only case that ---- And, in fact, we have cases that do address the legal error issue. If there's a legal error, that is enough to grant relief, right? That's true, but this Court's precedent has said that due process does not mandate a right to present evidence in these review hearings. Specifically in Alvarado-Herrera, the Court said, quote, ''Due process does not mandate the right to present new evidence to an appellate tribunal when a litigant has been afforded a reasonable opportunity to present evidence to the first instance decision maker.'' It doesn't require it, but it permits it if in the discretion that needs to be exercised while knowing you have it. And I also have a question about your assertion, even if we can reach it, that this is harmless error because at AR-19 the judge says, ''I have no idea why you were raped or if you were raped.'' And all of that could have a basis to make you eligible for asylum or not. But, and then he goes on to say, ''But you didn't tell this to the asylum officer and that's why all I can do is review what the officer had.'' So I don't know why that would necessarily be harmless, even under your analysis. Because the immigration judge was explaining that he was – the Petitioner was not denied his – the full hearing because of a failure to establish harm, right? The immigration judge is making the point, it doesn't matter. Yes, suffering a sexual harm may make it so that you've suffered harm rising to the level of persecution. But he wasn't denied relief on that basis. He was denied relief based on nexus and based on a government unwillingness or inability to control and for cap protection because of government acquiescence. And the evidence he sought to submit didn't touch that issue. And the immigration judge, after the immigration judge pointed that out, he asked to hear from counsel. And counsel, in the argument to the immigration judge, didn't argue how the sexual assault would change the nexus analysis and actually conceded the point on CAT and said, ''Well, yes, it's true that the government wasn't aware of it.'' Which is fatal to the CAT application because in order to demonstrate acquiescence, you have to show that the government was aware of the harm and breached a legal duty to intervene. So the immigration judge said, ''Even if I consider this additional harm, that doesn't resolve the dispositive issues in the case.'' The asylum officer didn't deny the reasonable fear hearing or deny a full hearing based on a failure to show the requisite harm. And even today, the Petitioner has only argued that the sexual assault adds to the level of harm. That's not the basis why he was denied his claim. So it's true that, you know, I can certainly understand why somebody would be reluctant to disclose a sexual assault in an asylum review hearing. But if you squander your opportunity to present evidence when you were supposed to and you find yourself before an appellate tribunal, you have to do more than just explain why you didn't raise it. Maybe Petitioner has a compelling reason why he didn't raise it. You have to show that the evidence would make a difference. And if you don't show that the evidence would make a difference, no appellate fact finder is going to send a case back or consider new evidence that doesn't change the outcome of the case. I mean, Petitioner here has essentially conceded today that the only reason they wanted to introduce this evidence of the sexual assault was to show that there was more harm suffered. That doesn't resolve the nexus issue. It doesn't resolve the, you know, victim. The Catt claim doesn't require nexus, does it? No, but it does require acquiescence. And again, the Petitioner conceded to the IJ that the government wasn't aware of the rape because he didn't report it. So how can you show acquiescence if you can't show that the government was aware of the problem and either turned a blind eye to it or consented or acquiesced to it? So the Petitioner essentially conceded that the Catt claim couldn't be met when given an opportunity to argue about why the immigration judge should consider this additional evidence of sexual assault. Let me ask you a question. It's the same question I asked your friend on the other side. If the IJ had simply said, I am not going to consider or I will not consider this additional evidence of the sexual assault, would that have been enough under our case law to defer to the judgment or the discretion of the IJ to not consider the new evidence? Yes. Okay. So those are not the facts of this case. Right. So we have additional statements. How are we to know when an IJ is actually exercising their discretion? And if we have a case like this where there are statements that are made that indicate otherwise, is that enough? Well, when you – okay, well, I would start with the authority, okay? There is no authority in the regulations, and the regulations are the only authority for the reasonable fear proceedings. There's nothing here that sets forth a standard for what the immigration judge has to do in considering whether to take new evidence. We're talking about something that has no judicially reviewable standard, right? It's not like, for example, a continuance in the regulation that says the IJ may grant continuance for good cause. So the regulation provides a standard that the court can look at. There's nothing like that here, right? The regulations don't speak to evidence, and it's really because it's not supposed to be an evidentiary hearing. I know that the courts have said that the IJs may do it, and sometimes the IJs do do it, usually not to consider something that wasn't raised before. It's usually to flesh out something that's already been raised and clarify a particular issue. So when I read the context, I grant you that the IJ used language that made it seem like he didn't have discretion, but he also used language that acknowledged that he did have discretion, and when you read it in context, it looks like what the immigration judge was trying to make a distinction between was between evidence presented that should have been about something wholly new that wasn't raised versus testimony that just simply clarifies something that was already raised beforehand. I'll grant you the IJ used language that made it very confusing, using the fundamentally unfair language. I think the reason the immigration judge was talking about unfairly, as bizarre as this may sound, I think he was talking about saying it wouldn't be fair to overturn what an asylum officer did based on something that the asylum officer didn't have in front of him. Does due process require fairness to the asylum officer? It doesn't. Or does it require fairness to the person whose fate is at stake? It doesn't require that, Your Honor. I want to make that clear. That's why I said it was bizarre. But remember that these are oral proceedings. These are, you know, when the immigration judge was talking about this, they're not writing down a decision. They're just sort of having a discussion. And I think the point that the immigration judge was making is saying what you're trying to present is something that should have been presented to the asylum officer. This isn't the taking of additional evidence on something that you've already talked about. And I think that's the distinction that the immigration judge was making. I grant you the language here is – makes it confusing. But given that the immigration judge said that after acknowledging that he already had the discretion, he didn't just cite the case, Your Honor. He cited the proposition the case stood for and used the language, I may but need not accept the evidence. So for the – That's in the written decision. What's that? That's in the written decision. But the transcript – It's also in the transcript, I believe, Your Honor. Well, it may be. But it just seems to me – well, we've been over this, so. It says – it says in the record on page 14, it talks about Alvarado Herrera and it says, It squarely addressed immigration judges can but do not have to consider new evidence or testimony in reasonable fear proceedings. So the immigration judge plainly acknowledged that the case law said he had discretion. So when you understand what he says after that, I don't think he's actually saying that he doesn't have discretion. I think what he's – he's trying to make the distinction about the type of evidence that the Petitioner was trying to present. That he was presenting something wholly new that hadn't been presented before the asylum officer versus when – when immigration judges usually take evidence in, I want to make this clear, a hearing that's not supposed to be an evidentiary hearing, when they do it, it's usually to clarify something that's already been raised to the asylum officer. And that's, I think, what the immigration judge was having trouble with here. And that's, I think, why he was refusing to take the additional evidence. Of course, he goes on to say that evidence doesn't matter anyway, because even if I were to consider it, it doesn't resolve the key questions. Nexus, government willingness and inability to control, and acquiescence. Even if you credit the Petitioner and add this harm and say that it's harm rising to the level of persecution, you know, just being a victim of a sexual assault doesn't automatically make you a refugee or entitled to cap protection. There are elements that have to be met. And the Petitioner even today has not argued that it changes the – those three key elements. That's critical. So why is an immigration judge going to consider new evidence that doesn't change the outcome of a case? You have to make a case, especially if you're before an appellate tribunal who doesn't have to take that new evidence. And so for that reason, getting back to that harmless error, even if the court were to send it back for the IJ to exercise his discretion and say that he must accept this evidence of sexual assault, it doesn't change the outcome. So I see that I'm running low on time. I'm happy to answer any more questions before the court. No, thank you, Counsel. Okay. Thank you very much for your time, Your Honors. Thank you. I just would contest the characterization of our argument that there is no acquiescence here of the government. First of all, I just wanted to say that there is – the purpose of the reasonable fear process is a screening process and it's to weed out frivolous cases. So the issues raised by the government, they're substantial enough and there wasn't a lot of evidence presented to the asylum office in order for them to adequately resolve the acquiescence issue. Under Ornelas-Chavez, a CAT claimant is not required to report to the – even report to the authorities at all if doing so would be futile. Additionally, there's no actual knowledge of the specific torturous act that's necessary, just the general torturous activity, and that's in Zeng v. Ashcroft. So I do think there is a substantial claim for acquiescence here. The petitioner does talk about that specifically in his interview with the asylum office. He talks about corruption. He talks about connection between Peru, Libre, and the government, that there is a connection between them that would endanger him and not be able to seek protection. So I don't think that this is a frivolous claim, and I ask that the court send this back for the IJ to vacate. I want to clarify one thing. This type of proceeding, if it had gone the other way, would not have been in itself the full-fledged asylum hearing. Am I right about that? It would just send it on? Exactly. Yeah. So the only issue before this IJ was whether there's enough to warrant a full hearing. Exactly. So it doesn't certainly guarantee that your client would prevail. Exactly, Your Honor. Okay. That's the exact procedural posture of the case. Additionally, under the regulation, in terms of — I think this particular IJ is confused when he talks about fairness to the asylum office, because I think fairness to the petitioner is what primarily should be in front of his consideration. But the regulations talk about what is going to be considered by the IJ, and the regulations specifically say including. They don't say, you know, specifically that it would only be the officer's notes, a summary of facts and materials that form the basis of the negative decision. It's including those documents. So when people are in these reasonable fear proceedings, they are often the IJ to present evidence — or, excuse me, testimony, which is considered as evidence. So I don't know if the Court has any more questions. I don't think so. Thank you very much, Counsel. Okay. Thank you. I'd like to thank Counsel for their argument today. That concludes our arguments for this morning. Thank you to our Court staff, and we will stand in recess.
judges: GRABER, DESAI, ALBA